**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Patricia Garcia, | No. CV-16-01023-PHX-DLR |
| Plaintiff, | **ORDER** |
| v. | |
| JPMorgan Chase Bank NA, et al., | |
| Defendants. | |

Defendants JP Morgan Chase, N.A. ("Chase") and Bank of America, N.A. ("BANA") move for an award of attorneys' fees against Plaintiff Patricia Garcia pursuant to fee shifting provisions within Garcia's promissory note ("Note") and corresponding Deed of Trust ("DOT"). (Doc. 119.) Defendants also seek an award of fees jointly and severally against Garcia, her current attorneys Daniel Cracchiolo and Barbara Forde, her former attorney Monique Wilhite, and their respective law firms and marital communities pursuant to A.R.S. § 12-349 and 28 U.S.C. § 1927. The relevant background may be found in the Court's June 22, 2017 order dismissing this action ("*Garcia II*") (Doc. 117), and April 5, 2017 order granting summary judgment for Defendants in the related case of *Garcia v. JP Morgan Chase Bank NA, et al.*, No. CV-15-01493-PHX-DLR ("*Garcia I*") (Doc. 278 in *Garcia I*).[1] The Court grants Defendants' motion in part, as explained below.[2]

---

[1] Unless otherwise specified, record citations refer to documents filed in *Garcia II*.

[2] Garcia's request for oral argument is denied. *See* Fed. R. Civ. P. 78(b); LRCiv. 7.2(f).

## I. Preliminary Issues

Before turning to the merits, the Court addresses three preliminary issues: (1) the duplicative responsive briefing on whether Defendants are entitled to fees against Garcia pursuant to the Note and DOT, (2) Garcia's improper request for reconsideration or vacatur, and (3) the adequacy of the parties' efforts to meet and confer on Defendants' fee request.

### A. Duplicative Briefing

Defendants seek an award of fees against Garcia and her current and former attorneys, Wilhite, Cracchiolo, and Forde. Wilhite withdrew as counsel for Garcia on June 7, 2016, and therefore does not represent Garcia in opposing Defendants' fee request. (Doc. 20.) Wilhite appropriately filed a separate response memorandum addressing only Defendants' request for fees against her personally. (Doc. 142.)

Cracchiolo and Forde, however, both remain counsel of record for Garcia. Though the Court can understand why Forde and Cracchiolo decided to separately address Defendants' request for fees against them personally, the Court did not expect to receive separate briefs addressing the fee request against Garcia. A litigant is not entitled to as many responses as she has attorneys. Yet that is what happened with respect to Defendants' request for fees against Garcia pursuant to the fee-shifting provisions of the Note and DOT. (*See* Docs. 139 at 13-14; 148 at 3-4.) This duplicative briefing is another manifestation of a persistent problem throughout this litigation: the lack of adequate coordination and communication between Cracchiolo and Forde. (*See, e.g.*, Docs. 117 at 9-10; Doc. 148-2 at 24 ¶ 2.) The Court nonetheless will consider the duplicative briefing as to the fee request against Garcia, as Defendants have not objected to it. Where relevant, the Court will specify whether an argument is found in the response filed by Cracchiolo ("Cracchiolo response") or the response filed by Forde ("Forde response").

### B. Reconsideration or Vacatur of the Court's Dispositive Order

In responding to Defendants' contention that this case was groundless and not brought in good faith, Garcia comments almost in passing that the evidence justifies

either reconsideration or vacatur of the Court's dismissal order under Federal Rule of Civil Procedure 60. (Docs. 139 at 2; Doc. 148 at 10.) Garcia has not properly moved for such relief.

Indeed, this case's appellate history highlights why it is imperative for parties to actually *move* for relief and not just casually allude to it in unrelated filings. Garcia noticed an appeal on July 17, 2017, which she amended on July 26, 2017 after the Court formally entered judgment. (Docs. 124, 132.) Had Garica properly moved for reconsideration of the Court's dismissal order, or for Rule 60 relief within 28 days after the Court entered judgment on July 20, 2017, the Ninth Circuit would have held her notice of appeal in abeyance until the Court ruled on her motion. *See* Fed. R. App. P. 4(a)(4); *Leader Nat'l Ins. Co. v. Indus. Indem. Ins. Co.*, 19 F.3d 444, 445 (9th Cir. 1994). That did not happen. Rather, Garcia's appeal proceeded for several months until the parties stipulated to dismissal, resulting in the Ninth Circuit issuing its mandate on December 5, 2017. (Doc. 154.) Thus, not even the Ninth Circuit understood Garcia to have properly moved for reconsideration or other post-judgment relief.

In addition to not actually moving for relief, Garcia's passing requests for reconsideration or vacatur are substantively and procedurally improper. First, in the Cracchiolo response, Garcia suggests that the Court should reconsider the merits of this case. (Doc. 139 at 2.) Pursuant to LRCiv 7.2(g)(2), however, "[a]bsent good cause shown, any motion for reconsideration shall be filed no later than fourteen (14) days after the date of the filing of the Order that is the subject of the motion." The Court issued its dismissal order on June 22, 2017 and entered judgment based on that order on July 20, 2017. Even taking the latest of these two dates, any motion for reconsideration was due by no later than August 3, 2017. Garcia's passing references to reconsideration are made in a response memorandum filed on September 6, 2017, over a month late, and she has not shown good cause for the delay.[3] Nor does her one-sentence allusion to

---

[3] The Court granted the parties' stipulation to extend the time for Garcia to respond to Defendants' attorneys' fees motion to September 6, 2017, but neither the parties' stipulation nor the Court's order approving it mentioned a request for reconsideration. (Docs. 133, 134.)

- 3 -

reconsideration comply with the requirements of LRCiv 7.2(g)(1).

Next, in a footnote to the Forde response, Garcia argues that that the judgments in *Garcia I* and *Garcia II* should be vacated under Rule 60. (Doc. 148 at 10 n.11.) The Court will not consider any such argument concerning the summary judgment order in *Garcia I*; it should go without saying that if Garica wants relief in *Garcia I*, she must file a motion in that case and not in this one. As for Garcia's suggestion that the Court should vacate the judgment in this case, Garcia did not follow the appropriate procedure for requesting such relief after she filed her appeal. Specifically,

> [o]nce an appeal is filed, the district court no longer has jurisdiction to consider motions to vacate judgment. However, a district court may entertain and decide a Rule 60(b) motion after notice of appeal is filed if the movant follows a certain procedure, which is to ask the district court whether it wishes to entertain the motion, or to grant it, and then move [the appeals court], if appropriate, for remand of the case.

*Davis v. Yageo Corp.*, 481 F.3d 661, 685 (9th Cir. 2007) (internal quotations and citations omitted). This did not happen.

Garcia's failure to follow this procedure raises concerns about whether the Court may properly entertain her request for post-judgment relief now. Indeed, all the arguments raised in her response briefs could and likely would have been made in her appellate briefs had she not dismissed her appeal. For the Court to consider them now, after Garcia has dismissed her appeal and the Ninth Circuit has issued its mandate, would afford her an impermissible second bite at the apple. Moreover, Garcia has since filed for bankruptcy, meaning further prosecution of these matters would be complicated by the bankruptcy stay. It therefore is not clear that Garica still desires post-judgment relief. These subsequent developments, coupled with the absence of a formal motion requesting such relief, counsel against the Court further entertaining these arguments in this order.

**C. Adequacy of the Meet and Confer**

Local Rule of Civil Procedure 54.2(d)(1) states:

> No motion for award of attorneys' fees will be considered unless a separate statement of the moving counsel is attached to the supporting memorandum certifying that, after personal consultation and good faith efforts to do so, the parties have been unable to satisfactorily resolve all disputed issues relating to attorneys' fees or that the moving counsel has made a good faith effort, but has been unable, to arrange such conference. The statement of consultation shall set forth the date of the consultation, the names of the participating attorneys and the specific results or shall describe the efforts made to arrange such conference and explain the reasons why such conference did not occur.

In accordance with this rule, Defendants submitted a separate statement of consultation that explained the following:

> Defendants . . . provide this statement of consultation with . . . Garcia's counsel pursuant to LRCiv 54.2(d)(1). On July 6, 2017, Defendants' counsel sent counsel for [Garcia], including former counsel Monique Wilhite and current counsel Daniel Cracchiolo and Barbara Forde, email correspondence requesting to schedule a time to meet and confer regarding Defendants intention to file a motion for attorneys' fees. Ms. Forde and Ms. Wilhite responded. Ms. Wilhite declined to participate in the meet in confer because she is no longer counsel of record.
>
> Subsequently, on July 6, 2017, Ms. Forde stated that Garcia objects to a request for attorneys' fees and further that Ms. Forde believes this Court might deny a motion for attorneys' fees in light of Garcia's intention to appeal this Court's decision.

(Doc. 120.)

In the Forde response, Garcia contends that Defendants' efforts to meet and confer were inadequate because Defendants did not specify that they intended to seek sanctions against Garcia's current and former attorneys, nor did they make a good-faith effort to resolve the dispute. (Doc. 148 at 2.) For support, Garcia attaches the emails exchanged on June 6, 2017. (Doc. 148-2 at 49-51.) In relevant part, Daniel Crane, counsel for Defendants, emailed Cracchiolo, Forde, and Wilhite the following: "Please let me know if you are available today to meet and confer regarding Defendants . . . intention to file a motion for attorneys' fees based upon the Court's dismissal of Ms. Garcia's claims in *Garcia II*." (*Id.* at 50.) Forde replied:

> I am traveling and just arrived in Nashville.

> I would recommend you contact the court, as my understanding is that Judge Rayes will simply deny any attorney fee motion pending appeal. And as Bob Shely knows, if we don't settle through the Ninth Circuit mediation program, Garcia II will be appealed. If you have a deadline looming for filing the application, I will agree to an extension.

(*Id.*) Bob Shely, now former counsel for Defendants, responded:

> The judge might deny the motion or decline to hear briefing, but he might decide it too. Either way, we plan to file it, and we presume that you would oppose it [in] any event, so I'd like at least to have your agreement that we have met and conferred and that Garcia opposes the motion in substance and timing.

(*Id.* at 49.) Forde replied: "Yes we would oppose the motion." (*Id.*)

Though the parties' correspondence pays lip service to LRCiv 54.2(d)(1), it does not comport with the purpose of the rule. The emails do not reflect a substantive conferral over the issues raised in the motion; they reflect a failed attempt to schedule a time to confer, which evidently no one was interested in doing.

Though only Forde raises the issue, the Court finds that Defendants' failure to adequately meet and confer with Wilhite precludes them from seeking fees against her. At no point in the emails discussed above did Defendants disclose the basis for their planned motion, specifically that they intended to seek a fee award against Garcia's current and former attorneys. Perhaps had they done so, Wilhite would have conferred on the motion to the extent it sought fees from her personally. Indeed, Defendants' statement of conferral indicates that Wilhite declined to participate in the consultation because she is no longer counsel of record, which suggests Wilhite believed Defendants' anticipated fee motion would be directed against Garcia only, and not also against her. Because Wilhite was no longer counsel of record, it was reasonable for her to decline the invitation to meet and confer, as she now lacks authority to litigate or negotiate on Garcia's behalf. But had she known that fees would be sought from her personally, a productive consultation on that issue might have been possible.

Cracchiolo and Forde, however, remain counsel of record for Garcia and, therefore, had an obligation to engage with Defendants in good faith regardless of the

basis for the motion. Garcia accuses Defendants of certifying a falsehood in their statement of consultation, but this is not entirely accurate. Defendants' counsel, Cracchiolo, and Forde all share some responsibility for the failure to meet and confer.

For her part and to her credit, Forde initially did not seem reluctant to meet and confer. Rather, she informed Crane that she was travelling out-of-state, noted some concerns about the timing of the anticipated attorneys' fees motion, and offered to stipulate to an extension of time to file the fee application. Instead, of offering to confer via telephone or to schedule a time to confer after Forde returned to Arizona, Shely simply reiterated his intent to file the motion (again, without any discussion of its substance), and asked Forde if she would agree that the parties had met and conferred, and to confirm that Garcia opposes the motion. Of course, the parties had not met and conferred in any meaningful sense. Forde nevertheless responded affirmatively and stated that Garcia would oppose the motion. This, of course, raises a serious question: how would Garcia or her attorneys know that they would oppose the motion if the basis for the motion had not been disclosed?

Cracchiolo evidently did not respond to the email at all.

No party genuinely sought to confer in good faith. It is not good faith to blindly oppose a motion without substantive information about its legal and factual bases. Nor is it good faith to agree to tell the Court that you have conferred when, in reality, you have not, or to give up after one failed scheduling attempt.

Nonetheless, the Court will not deny Defendants' application as it pertains to Garcia, Cracchiolo, and Forde on this basis. Courts in this district occasionally overlook this procedural shortcoming, especially when doing so causes no prejudice, or when ordering the movant to file a new motion after consultation would be futile. *See Skydive Ariz., Inc. v. Quattrocchi*, No. CV 05-2656-PHX-MHM, 2011 WL 1004945, at *1 (D. Ariz. Mar. 22, 2011). The Court finds such to be the case. Garcia's willingness to declare her unqualified opposition to the attorneys' fees motion without having seen or discussed its contents strongly suggests that a more substantive consultation would not

have changed her mind. Moreover, "[b]ased on the rancor between the [p]arties in this case and their repeated failure to work out issues without resorting to motion practice, the Court highly doubts any such consultation would have been productive." *Id.* The Court therefore will excuse the parties' failure to meet and confer in good faith because the parties regrettably do not seem receptive to such a consultation and, based on their diametrically opposed memoranda, it likely would be futile.

And with that, the Court proceeds to the merits.

## II. Fees Pursuant to the Note and DOT

### A. Entitlement

Defendants argue that four provisions in the Note and DOT require the Court to award reasonable attorneys' fees in this case. First, paragraph 14 of Garcia's DOT states: "Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees." (Doc. 119-1 at 86-87.) Second, paragraph 9 of the DOT provides that the Lender may seek reasonable attorneys' fees expended for participating in a "legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument." (*Id.* at 84.) Third, paragraph 22 of the DOT provides that the Lender may collect reasonable attorneys' fees incurred in connection with pursuing an acceleration of the loan. (*Id.* at 89.) Finally, paragraph 7 of the Note states that Garcia will be in default if she does not pay on the Note as agreed, and that "the Note Holder will have the right to be paid back by [Garcia] for all of the costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees." (*Id.* at 73.)

Garcia is identified as Borrower and Washington Mutual Bank, FA ("WaMu") is identified as "Lender" under both instruments. (*Id.* at 75, 77.) In its order granting summary judgment for Defendants in *Garcia I*, the Court found based on the uncontroverted evidence that "BANA purchased the Note from WaMu in 2007, and at all

- 8 -

relevant times BANA possessed the Note through Chase, which services the loan on BANA's behalf." (Doc. 278 at 3 in *Garcia I*.) In dismissing this case, the Court reiterated that finding and concluded that it precluded a contrary determination in the second lawsuit. (Doc. 117 at 1, 19-20.) Though Garcia continues to argue over these rulings in her responses to Defendants' attorneys' fees application, she did not timely or properly move for reconsideration in either case, nor has she pursued an appeal. Instead, she voluntarily dismissed her appeals in both cases and the Ninth Circuit has issued mandates. Accordingly, Defendants are entitled to invoke the fee-shifting provisions of the Note and DOT.

As the Court explained in its dismissal order:

> The operative complaint . . . contains (1) an action to quiet title and (2) a claim that Defendants violated A.R.S. § 33-420 by recording certain documents asserting an interest in the . . . property, such as an assignment of the [DOT], a substitution of trustee, and a notice of trustee's sale. . . . Both claims are based on allegations that neither Chase nor BANA "own" or otherwise have a beneficial interest in the loan.
>
> . . .
>
> The same is true for Garcia's proposed amended complaint . . . . In addition to the quiet title and false recordings claims discussed above, the proposed amended complaint seeks a declaratory judgment that Defendants do not have an interest in the loan and alleges claims for intentional interference with contractual relations, intentional/negligent infliction of emotional distress, fraud, and violations of the Arizona Consumer Fraud Act . . . . All of these claims fundamentally are based on allegations that Defendants do not have an interest in Garcia's loan and, therefore, acted improperly by negotiating a modification they allegedly were not authorized to provide and by initiating non-judicial foreclosure.

(*Id.* at 19-20.) Accordingly, Defendants' defense of this action falls within the scope of the fee-shifting provisions of the Note and DOT. *See Rich v. BAC Home Loans Servicing L.P.*, No. CV-11-00511-PHX-DLR, 2015 WL 12090226 (D. Ariz. Mar. 20, 2015) (reaching similar conclusion based on similar contractual provisions), *aff'd by Rich v. Bank of Am., N.A.*, 666 Fed. App'x 635 (9th Cir. 2016).

Garcia does not argue otherwise. Instead, she contends that Defendants cannot

recover attorneys' fees under the Note and DOT because A.R.S. §§ 12-1103(B) and 33-420(B) provide the exclusive mechanisms for recovering fees in actions asserting the two claims in the operative complaint, and those statutes preclude fees under these circumstances. (Docs. 139 at 13-14; 148 a 3-4.) Garcia is mistaken.

Although Arizona courts have held that A.R.S. § 12-1103(B) is the exclusive basis for attorneys' fees in quiet title actions, they have done so in the context of fee applications brought under A.R.S. § 12-341.01(A), which allows courts, in their discretion, to award attorneys' fees to prevailing parties in actions arising out of contract. *See Lange v. Lotzer*, 727 P.2d 38, 39-40 (Ariz. Ct. App. 1986). This conclusion is based both on the well-settled principle that "a specific statute governs over a general statute on the same subject and will control," and on A.R.S. § 12-341.01(A)'s plain language, which subordinates its application to other statutes that provide for attorneys' fees. *Id.* Indeed, all of the cases relied upon by Garcia involve applications for fees under A.R.S. § 12-341.01 rather than under express contractual fee-shifting provisions. *See Ariz. Bd. of Regents v. Main Street Mesa Assocs.*, 891 P.2d 889 (Ariz. Ct. App. 1994); *Lewis v. Pleasant Country Ltd.*, 840 P.2d 1051, 1060 (Ariz. Ct. App. 1992). The Court has not found a case in which an Arizona court has applied this rule to refuse an award of fees otherwise provided for by an express contractual fee-shifting provision. The same holds true for Arizona's false recordings statute.

To the contrary, under Arizona law "'when a contract has an attorney[s'] fees provision it controls to the exclusion of the statute.'" *Rich*, 666 Fed. App'x at 642 (quoting *Lisa v. Strom*, 904 P.2d 1239, 1242 n.2 (Ariz. Ct. App. 1995)). Further, the Court lacks discretion to refuse to award fees under a contractual fee-shifting provision, which must be enforced according to its terms. *See Chase Bank of Ariz. v. Acosta*, 880 P.2d 1109, 1121 (Ariz. Ct. App. 1994). Stated differently, where parties have contractually agreed to shift attorneys' fees, their agreement controls. But where no such fee-shifting provision exists, a specific fee-shifting statute will govern to the exclusion of a generic one. Defendants therefore are entitled to their reasonable attorneys' fees

because the parties have contractually agreed to shift fees under these circumstances, and the Court is without discretion to refuse the award.

### B. Reasonableness of Fee Request

Where reasonable attorneys' fees are sought pursuant to a contractual provision, a fee award must be supported by proof of what is reasonable. *Schweiger v. China Doll Rest., Inc.*, 673 P.2d 927, 931 (Ariz. Ct. App. 1983). "A fee award calculated by a lodestar method—multiplying a reasonable hourly rate by the number of hours expended—is presumptively reasonable." *Flood Control Dist. of Maricopa Cty. v. Paloma Inv. Ltd. P'ship*, 279 P.3d 1191, 1212 (Ariz. Ct. App. 2012).

> Once the prevailing party makes a prima facie case that the fees requested are reasonable, the burden shifts to the party opposing the fee request to establish that the amount requested is clearly excessive. If that party fails to make such a showing of unreasonableness, the prevailing party is entitled to full payment of the fees. If, however, the party opposing the award shows that the otherwise prima facie reasonable fee request is excessive, the court has discretion to reduce the fees to a reasonable level.

*Geller v. Lesk*, 285 P.3d 972, 976 (Ariz. Ct. App. 2012).

When analyzing the reasonableness of a requested fee award, the Court begins by determining the billing rate charged by the attorneys who worked on the case. *Schweiger*, 673 P.2d at 931. "[I]n corporate and commercial litigation between fee-paying clients, there is no need to determine the reasonable hourly rate prevailing in the community for similar work because the rate charged by the lawyer to the client is the best indication of what is reasonable under the circumstances of the particular case." *Id.* at 931-32. However, "upon the presentation of an opposing affidavit setting forth the reasons why the hourly billing rate is unreasonable, the court may utilize a lesser rate." *Id.* at 932.

Defendants seek fees charged by two attorneys, Shely and Crane, and one paralegal, Justin Monnet. (Doc. 119-1 at 9.) Shely billed at an hourly rate of $430, Crane at $279, and Monnet at $219. (*Id.*) In the Forde response, Garcia unpersuasively argues that these rates are unreasonably high because the results of a 2013 survey

- 11 -

conducted by the Arizona State Bar indicated that the mean billing rates for attorneys and paralegals are lower. (Docs. 148 at 17; 148-12.) As Defendants note in their reply, these survey results are several years old. Moreover, although the survey discusses factors such as firm size, experience, location, and field of practice in isolation, it does not analyze how these factors might affect fee rates in combination. The Court therefore finds that the hourly rates charged by Defendants' counsel are reasonable.

Next, the Court must assess whether Defendants' attorneys billed a reasonable number of hours for appropriate tasks. A reasonable attorneys' fee award compensates only for those "item[s] of service which, at the time rendered, would have been undertaken by a reasonable and prudent lawyer to advance or protect his client's interest." *Schweiger*, 673 P.2d at 932 (internal quotation and citation omitted). To that end, the party seeking a fee award must submit an affidavit indicating "the types of legal services provided, the date the service was provided, the attorney providing the service . . ., and the time spent providing the service." *Id.*; *see also* LRCiv 54.2(d)(3), (e). Once that party establishes its entitlement to fees and submits a sufficiently-detailed affidavit, "the burden shifts to the party opposing the fee award to demonstrate the impropriety or unreasonableness of the requested fees." *Nolan v. Starlight Pines Homeowners Ass'n*, 167 P.3d 1277, 1286 (Ariz. Ct. App. 2007). The opposing party must "present specific objections to the reasonableness of the fees requested." *Id.* Generic assertions that the fees "are inflated and that much of counsel's work was unnecessary . . . are insufficient as a matter of law." *Id.* at 1285-86.

Defendants have met their prima facie burden by submitting a detailed, task-based itemization of the fees incurred in defending against this action, which total $98,307.20. (Doc. 119-1 at 93-99.) This itemization includes the date each task was performed, the attorney or paralegal performing the task, a description of the task, the amount of time spent performing it, and the total amount billed for each task. Defendants also seek $456.72 in non-taxable costs, which have been similarly itemized. (*Id.* at 101.) The burden therefore shifts to Garcia to present specific objections to the reasonableness of

the fees requested.

The Forde response is the only submission that attempts to do so. In most cases, however, Garcia objects not to the reasonableness of specific fee entries, but to whether certain fees may be attributed to sanctionable conduct. But this is not the relevant inquiry when awarding fees under the contractual fee-shifting provisions. In many other cases, Garcia's objections are too generic and simply criticize Defendants' counsel for overworking the case.

With that said, the Court sustains Garcia's objections to the following billing entries: 49, 110, 116, 131, and 133. (*See* Doc. 148-2 ¶¶ 25, 30, 36, 39.) These entries total $1,599.20. The Court therefore reduces Defendants' fee award against Garcia pursuant to the fee-shifting provisions in the Note and DOT to $96,708. No objections have been made to Defendants' non-taxable costs. The Court therefore awards Defendants $456.72 in non-taxable costs pursuant to those same contractual provisions.

**III. Fees as a Sanction Under A.R.S. § 12-349**

Defendants also seek to hold Garcia, Forde, and Cracchiolo jointly and severally liable for attorneys' fees and $5,000 in damages under A.R.S. § 12-349, which states:

> Except as otherwise provided by and not inconsistent with another statute, in any civil action commenced or appealed in a court of record in this state, the court shall assess reasonable attorney fees, expenses and, at the court's discretion, double damages of not to exceed five thousand dollars against an attorney or party, including this state and political subdivisions of this state, if the attorney or party does any of the following:
>
> 1. Brings or defends a claim without substantial justification.
>
> 2. Brings or defends a claim solely or primarily for delay or harassment.
>
> 3. Unreasonably expands or delays the proceeding.
>
> 4. Engages in abuse of discovery.

"'[W]ithout substantial justification' means that the claim or defense is groundless and not made in good faith." A.R.S. § 12-349(F).

The Ninth Circuit has held, however, that A.R.S. § 12-349 cannot be used to

- 13 -

sanction attorney or party misconduct in actions brought or removed to federal court.[4] *In re Larry's Apartment, L.L.C.*, 249 F.3d 832, 837-39 (9th Cir. 2001). Instead, federal law governs where sanctions are sought "based upon misconduct by an attorney or party in the litigation itself, rather than upon a matter of substantive law." *Id.* at 838; *see also GoDaddy.com LLC v. RPost Commc'n Ltd.*, No. CV-14-00126-PHX-JAT, 2016 WL 4569122, at *10-11 (D. Ariz. Sept. 1, 2016); *R. Prasad Indus. v. Flat Irons Envtl. Solutions Corp.*, No. CV-12-08261-PCT-JAT, 2014 WL 4722487, at *12 (D. Ariz. Sept. 23, 2014); *Woehler v. Bank of Am., N.A.*, No. CV-11-1088-PHX-SRB, 2011 WL 13118553, at *4 (D. Ariz. Oct. 13, 2011).[5] The Court therefore denies Defendants' request for sanctions under A.R.S. § 12-349 because "state law rules for attorney fees and sanctions do not apply to cases in federal district court where requests for fees are based on an attorney's conduct." *Woehler*, 2011 WL 13118553, at *4.

**IV. Fees as a Sanction Under 28 U.S.C. § 1927**

Under 28 U.S.C. § 1927, lawyers who unreasonably and vexatiously multiply court proceedings may be assessed the excess costs, expenses, and attorneys' fees incurred as a result. Section 1927 authorizes only the assessment of excess costs, expenses, and fees incurred because of an attorney's unreasonable conduct; it does not authorize an award of the total costs of litigation. *See United States v. Associated Convalescent Enters., Inc.*, 766 F.2d 1342, 1347-48 (9th Cir. 1985). To award fees under this section, the Court must find that the attorney acted in bad faith. *MGIC Indem. Corp. v. Moore*, 952 F.2d 1120, 1122 (9th Cir. 1991). An attorney's bad faith is assessed under a subjective standard, and "is present when an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent." *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 436 (9th Cir. 1996)

---

[4] Technically, *Larry's Apartment* holds that A.R.S. § 12-349 does not apply to actions removed to federal courts sitting in diversity. Here, this matter was removed under both 28 U.S.C. §§ 1331 and 1332. (Doc. 1 ¶¶ 5-6.) This distinction makes no difference, however, because a federal court overseeing a claim presenting a federal question likewise would apply federal law to sanction attorney misconduct.

[5] Neither party brought these authorities to the Court's attention.

- 14 -

(quotation and citation omitted); *see also In re Giardi*, 611 F.3d 1027, 1061 (9th Cir. 2010) ("[A] finding that the attorney recklessly or intentionally misled the court," or "a finding that the attorney[] recklessly raised a frivolous argument which resulted in the multiplication of the proceedings is . . . sufficient to impose sanctions under § 1927." (internal citations omitted)). Sanctions under 28 U.S.C. § 1927 may be awarded only against an attorney, not an employee of an attorney or a law firm. *See Kaass Law v. Wells Fargo Bank, N.A.*, 799 F.3d 1290, 1293 (9th Cir. 2015).

Having carefully considered the parties' arguments and reflected on the history of this case, the Court declines to sanction Cracchiolo and Forde under 28 U.S.C. § 1927 because Defendants have not proven that they acted in subjective bad faith. It does not follow, however, that Cracchiolo and Forde's conduct was objectively reasonable, or that the claims they pursued on behalf of Garcia were meritorious. To the contrary, Garcia's legal theories are dubious at best, and the Court finds for a number of reasons that Cracchiolo and Forde prosecuted this case in an objectively unreasonable manner. Because the Court declines to sanction Cracchiolo and Forde, it will not exhaustively recount these reasons, but a few examples will suffice to convey the point.

First, Garcia and her attorneys' contention that Defendants lacked authority to enforce the Note and DOT is based largely on their belief that securitization somehow divested Defendants of their interests in these instruments. But "the theory that securitization renders the [DOT] unenforceable has been repeatedly rejected." *Kuc v. Bank of Am., NA*, No. CV 12-08024-PCT-JFM, 2012 WL 1268126, at *3 (D. Ariz. Apr. 16, 2012); *see also In re Nordeen*, 495 B.R. 468, 478-81 (9th Cir. B.A.P. 2013). Garcia's theories also seem to ignore basic agency principles. *See, e.g.*, *Steinberger v. IndyMac Mortgage Servs.*, No. CV-15-00450-PHX-ROS, 2017 WL 6040003, at *20 (D. Ariz. Jan. 12, 2017). Moreover, Garcia's efforts to quiet title were meritless because "under long-established Arizona law . . . a plaintiff cannot bring a quiet title action unless she has paid off her mortgage in full." *Bergdale v. Countrywide Bank FSB*, No. CV-12-8057-PCT-GMS, 2012 WL 4120482, at *6 (D. Ariz. Sept. 18, 2012) (citing *Farrell v. West*, 114

P.2d 910, 911 (1941)); *see also Jones v. Recontrust Co.*, 599 Fed. App'x 328, 328-29 (9th Cir. 2015); *Hermosillo v. Caliber Home Loans Inc.*, No. CV-15-02052-PHX-ESW, 2017 WL 2653039, at *7 (D. Ariz. June 20, 2017).

Second, the Court repeatedly voiced concerns that these claims should have been brought through an amendment to the complaint in *Garcia I*, rather than a separate lawsuit. Indeed, the verified complaint in *Garcia I* affirmatively alleged that BANA is the beneficiary of the DOT and that Chase services the loan on its behalf. (Doc. 1-1 at 20, 31 ¶¶ 11, 13, 110-11 in *Garcia I*.) Yet that allegation never was removed, and Garcia pursued this separate lawsuit based on a wholly contradictory premise. Further, the justifications for bringing this separate action are flimsy. For instance, although A.R.S. § 12-401(12) requires quiet title actions to be brought in the county in which the subject real property is located, nothing in that statute requires such actions to be brought in state rather than federal court.[6] Relatedly, even though Garcia's attorneys might have wanted to pursue this action in state court, it was not objectively reasonable to believe it would stay there considering that complete diversity exists and the parties already were litigating a substantially related case in federal court. Indeed, because *Garcia I* came to this Court on removal, Garcia's attorneys should have anticipated removal in this case. (Doc. 1 in *Garcia I*.)

To compound this issue, and as painstakingly explained in the Court's dismissal order, Garcia's attorneys refused "two opportunities to consolidate these matters early in the litigation, at a time when Defendants would not have been prejudiced by consolidation, and in a manner that would have avoided needless duplication of resources. Instead, Garcia chose to duplicate discovery and litigate both cases simultaneously." (Doc. 117 at 23.) The Court expressly found that, had Garcia not inexplicably withdrew her first consolidation motion, *Garcia I* and *Garcia II* likely would have been consolidated and many of the problems that have resulted from the simultaneous litigation would have been avoided. (*Id.* at 7.) Moreover, Garcia's

---

[6] This Court is located in the same county as Garcia's home, and quiet title actions of a similar variety routinely are litigated here.

- 16 -

attorneys repeatedly misrepresented the relationship between *Garcia I* and *Garcia II* whenever consolidation or the possibility of joint discovery was discussed, which suggests that their positions were motivated more by short-term strategy than ensuring the "just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.

Third, as the Court previously noted, a lack of adequate communication between Cracchiolo, Forde, and Wilhite (during the time that she represented Garcia), resulted in some duplicative discovery and much confusion about the nature of *Garcia I* and its relationship to and potential impact on the claims asserted in *Garcia II*. For instance, Forde was not up to speed on the substantial, relevant discovery that had occurred in *Garcia I*, even though Cracchiolo has been co-counsel in both cases since their inception. Likewise, Forde evidently represented during the June 23, 2016 scheduling conference that the ownership of Garcia's loan was not at issue in *Garcia I* based on her conversations with Cracchiolo and Wilhite. Of course, substantial discovery on this issue had occurred in *Garcia I*, and Wilhite had represented to the Court on multiple occasions in that ownership issues were directly relevant to that case. Simple communication could have ensured that all attorneys were on the same page. Moreover Garcia's attorneys should have understood, with a little reflection and forethought, that *Garcia I* and *Garcia II* shared common issues of fact and law, that consolidation was appropriate, and that if Garcia intended to pursue the types of theories asserted in this case, she needed to amend her verified complaint in *Garcia I* to remove wholly inconsistent allegations.

If 28 U.S.C. § 1927 authorized sanctions for objectively bad faith conduct, the Court might be inclined to shift liability for some of Defendants' attorneys' fees to Garcia's counsel. But the statute requires proof of subjective bad faith, and the Court does not find that Cracchiolo and Forde knowingly or recklessly prosecuted this case for the purpose of harassing Defendants. Rather, Cracchiolo and Forde both seem genuinely to have been motivated by a desire to assist Garcia, but in their zealousness they lost sight of fundamental legal principles and their obligations under the Federal Rules of Civil

Procedure. Their conduct was objectively unreasonable, but not subjectively egregious enough to justify sanctions, especially of the magnitude sought by Defendants.

## V. Conclusion

For the foregoing reasons, the Court grants Defendants' motion for attorneys' fees against Garcia based on the fee-shifting provisions in the Note and DOT. The Court denies their request for sanctions under A.R.S. § 12-359 because state law does not govern the imposition of sanctions for attorney or party misconduct in federal court. The Court also denies Defendants' request for sanctions under 28 U.S.C. § 1927 because (1) they did not adequately confer with Wilhite about these sanctions and (2) Cracchiolo and Forde's conduct, though objectively unreasonable, does not rise to the level of subjective bad faith. Accordingly,

**IT IS ORDERED** that Defendants' Motion for Attorneys' Fees (Doc. 119) is **GRANTED** in part. Defendants are awarded attorneys' fees in the amount of $96,708 and non-taxable costs in the amount of $456.72 against Garcia.

Dated this 30th day of March, 2018.

Douglas L. Rayes
United States District Judge